# EXHIBIT A

Justin Farahi (State Bar No. 298086)
Raymond M. Collins (State Bar No. 199071)
**FARAHI LAW FIRM, APC**
22760 Hawthorne Boulevard, Suite 230
Torrance, California 90505
Telephone: (310) 774-4500
Fax: (424) 295-0557

Attorneys for Plaintiff,
ALEXANDER FOROUZESH

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES

| | |
|---|---|
| ALEXANDER FOROUZESH, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>STARBUCKS CORPORATION; and DOES 1 through 10, inclusive,<br><br>     Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Breach of Express Warranty;**<br>2. **Breach of Implied Warranty of Merchantability;**<br>3. **Negligent Representation;**<br>4. **Unjust Enrichment;**<br>5. **Fraud;**<br>6. **Violation of Consumers Legal Remedy Act (Cal. Civ. Code §§ 1750 *et seq.*);**<br>7. **Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); and**<br>8. **Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Alexander Forouzesh ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action case against Defendant Starbucks Corporation and Does 1 through 10 ("Starbucks" or "Defendant"), and alleges the following:

1

## INTRODUCTION

1.      Starbucks is the largest coffee retailer in the world, with more than 23,000 stores in over 60 countries and with over 13,000 stores in the United States. In its retail stores, Starbucks sells, among other things, coffee, tea, specialty drinks, and food. Among these menu items are iced coffee, iced tea, and iced blended specialty drinks crafted by Starbucks employees. These cold or iced drinks (referred to collectively by Starbucks and hereinafter as "Cold Drinks") are the subject of this lawsuit.[1] Starbucks employees who prepare these Cold Drinks include baristas, shift supervisors, assistant managers, and managers.

2.      Starbucks sells millions of Cold Drinks every year, accounting for billions of dollars in revenue. In 2015, Starbucks took in approximately $19.2 billion in total revenue.

3.      Since its founding in 1971, Starbucks has been at the forefront of the specialty coffee market. Originally a retailer of coffee beans and coffee-making equipment, over the years, Starbucks has helped introduce increasingly more expensive drinks to the American public, including the Cold Drinks at issue in this case. Over time, Starbucks customers have experienced rapidly rising prices, while in the process, Starbuck has bought out and taken over numerous smaller competitors.

4.      On its menu, Starbucks advertises all of its drinks, including its Cold Drinks, by fluid ounce. As detailed herein, a Starbucks customer who orders and pays for a Cold Drink receives much less than advertised—often nearly half as many fluid ounces.

5.      This is a class action lawsuit against Starbucks for misrepresenting its Cold Drinks as having more fluid ounces of the ordered Cold Drink than it actually delivers—and charges— the customer for.

6.      Plaintiff alleges that during the Class Period,[2] Starbucks has engaged in the practice of misrepresenting the amount of Cold Drink a customer will receive. As a result of this

---

[1] This lawsuit is not about bottled Starbucks drinks, but rather the Cold Drinks prepared by hand by Starbucks employees in its retail stores.

[2] The term "Class Period" as used herein shall mean between April 27, 2006 and the present.

2

practice, Starbucks' Cold Drinks contain significantly less product than advertised, by design and corporate practice and procedure.

7.      But for Starbucks' misrepresentations, Plaintiff and similarly situated purchasers of Cold Drinks would not have purchased or paid the price they did for the Cold Drinks.

8.      Plaintiff is among the millions of consumers who purchased one or more of the Cold Drinks during the ten years preceding the filing of this Complaint. Plaintiff and other similarly situated purchasers of the Cold Drinks relied on Starbucks' misrepresentations in Since its founding in 1971, Starbucks has been at the forefront of the specialty coffee market. Originally a retailer of coffee beans and coffee-making equipment, over the years, Starbucks has helped introduce increasingly more expensive drinks to the American public, including the Cold Drinks at issue in this case. Over time, Starbucks customers have experienced rapidly rising prices, while in the process, Starbuck has bought out and taken over numerous smaller competitors.

9.      On its menu, Starbucks advertises all of its drinks, including its Cold Drinks, by fluid ounce. As detailed herein, a Starbucks customer who orders and pays for a Cold Drink receives much less than advertised—often nearly half as many fluid ounces.

10.     This is a class action lawsuit against Starbucks for misrepresenting its Cold Drinks as having more fluid ounces of the ordered Cold Drink than it actually delivers—and charges— the customer for.

11.     Plaintiff alleges that during the Class Period,[3] Starbucks has engaged in the practice of misrepresenting the amount of Cold Drink a customer will receive. As a result of this practice, Starbucks' Cold Drinks contain significantly less product than advertised, by design and corporate practice and procedure.

12.     But for Starbucks' misrepresentations, Plaintiff and similarly situated purchasers of Cold Drinks would not have purchased or paid the price they did for the Cold Drinks.

---

[3] The term "Class Period" as used herein shall mean between April 27, 2006 and the present.

3

13.     Plaintiff is among the millions of consumers who purchased one or more of the Cold Drinks during the ten years preceding the filing of this Complaint. Plaintiff and other similarly situated purchasers of the Cold Drinks relied on Starbucks' misrepresentations in purchasing Cold Drinks, and would not have paid as much if anything, for the Cold Drinks had the true facts regarding the true amount of fluid ounces they were getting been disclosed.

14.     Plaintiff brings this class action on behalf of himself and all similarly situated consumers in the United States who purchased Starbucks' Cold Drinks during the Class Period for personal use (the "Class").[4] Plaintiff seeks damages, restitution, and injunctive relief for the Class for Starbucks' false and misleading marketing and sale of Cold Drinks. Plaintiff and the Class seek reasonable attorneys' fees as this lawsuit seeks enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## PARTIES

### Plaintiff:

15.     Plaintiff Alexander Forouzesh is a citizen of California who resides in Loa Angeles, California.  During the Class Period, Plaintiff regularly visited Starbucks locations in California and purchased Starbucks Cold Drinks from Starbucks retail stores.

16.     In purchasing Cold Drinks from Starbucks retail stores, Plaintiff relied on Starbucks' misrepresentations of material fact regarding the true amount of fluid ounces contained in the Cold Drinks. Plaintiff would not have paid as much, if anything for the Cold Drinks had he known that it contained less, and in many cases, nearly half as many, fluid ounces than claimed by Starbucks. As a result, Plaintiff suffered injury in fact and lost money or property.

///

///

---

[4] The complete definition of the "Class" is set forth in paragraph 56 herein.

**Defendants:**

17.     Starbucks Corporation is a Washington corporation with its principal place of business in Washington. Starbucks is headquartered at 2401 Utah Avenue South, Seattle, Washington 98134. Starbucks owns and operates retail stores in the United States and abroad, and is responsible for the manufacture, distribution, and marketing of its Cold Drinks throughout the United States and abroad. Further, Starbucks systematically and continuously does business in California and with California residents.

18.     The true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names pursuant to Code of Civil Procedure §474. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged and that Plaintiff's damages alleged were proximately caused by those Defendants. Plaintiff will seek permission of this Court to amend this Complaint to show such true names and capacities when they have been determined. Each reference in this Complaint to "Defendant," "Defendants" or a specifically named Defendant shall include reference to all Defendants, including fictitiously named Defendants, unless the context indicates otherwise.

19.     Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant was the owner, officer, director, owner, managing agent, employee or employer of each of the co-Defendants and in doing the acts hereinafter mentioned, each Defendant was acting within the scope of his authority as such owner, officer, director, owner, managing agent, employer and/or employee with the permission and consent of his co-Defendants, and that said acts of Defendant were ratified by said Defendant's co-Defendants.

20.     Plaintiff is informed and believes, and thereon alleges that some of the defendants named herein as DOES 1 through 10 are owners, officers, shareholders, directors, incorporators, and "alter egos" of the other defendants named herein in that those DOE defendants and/or members of their immediate families own or have owned all or substantially all of the shares or equitable interest, directors, managing partners, and officers of defendants named herein and

5

there existed and does exist a unity of interest and ownership between them such that any individuality between and among them, who are the alter egos of one and each other, is mere sham and shell organized and operated as the alter ego for his personal benefit and advantage and formed to shield defendants from liability and that defendants and their immediate families had control over the assets of the named defendants and that defendant and their immediate families have so intermingled their personal and corporate financial affairs that they are all the alter egos of one another.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action under the California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.)* and the California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*).

22.     This Court has personal jurisdiction over the parties because Defendant continually and systematically has conducted business in the State of California. Likewise, Plaintiff's rights were violated in the State of California and arose out of her contact with Defendant from California.

23.     Venue is proper in this Court because Code of Civil Procedure §§ 395 and 395.5 a n d case law interpreting those sections provide that if a foreign business entity fails to designate with the office of the California Secretary of State a principal place of business in California, it is subject to being sued in any county that a plaintiff desires.  On information and belief, defendant Starbucks is a foreign business entity and has failed to designate a principal place of business with the office of the Secretary of State as of the date this Complaint was filed.

///

///

///

6

## FACTUAL ALLEGATIONS COMMON TO CLASS

24.     During fiscal 2015, Starbucks generated over $19.2 billion in net revenue, a 16.5% increase from fiscal year 2014[5] Beverage sales accounted for 73% of Starbucks' net revenue in company-operated stores last year.[5a]

25.     Sales of Cold Drinks account for a substantial amount of this revenue, and have become increasingly popular in recent years. In fiscal 2014, shaken iced tea Cold Drinks were the most profitable menu addition of the year.[6]

26.     The Cold Drinks involved in this lawsuit are those which are handcrafted by Starbucks employees in Starbucks retail stores and served with ice - including, but not limited to, iced coffee, shaken iced tea, shaken iced tea lemonade, Refreshers™, and Fazio™ handcrafted sodas.

27.     On its menu, Starbucks advertises all of its drinks, including its Cold Drinks, by fluid ounce. This menu was plainly visible to Plaintiff and the Class during the Class Period. For example, as detailed in the menu below, which is available on Starbucks' website,[7] customers are told that if they order a Tall Cold Drink, they will receive 12 fluid ounces of that drink; in a Grande Cold Drink, they will receive 16 fluid ounces of that drink; in a Venti Cold Drink, they will receive 24 fluid ounces of that drink; and in a Trenta Cold Drink, they will receive 30 fluid ounces of that drink.

---

[5] Starbucks Corporation 2015 Annual Report.
5a *Id.*

[6] Forbes, *Starbucks' Top-line Growth in FY2014 Driven By Higher Pricing & Accelerated Expansion In New Beverage Segments, available at* http://www.forbes.com/sites/greatspeculations/2014/10/31/starbucks-top-linegrowth-in-fy2014-driven-by-higher-pricing-accelerated-expansion-in-new-beverage-segments/ [7] Last visited April 27, 2016.

7

●●●○○ Verizon  LTE          11:23 AM              82% ▭▸

customerservice.starbucks.com

# Customer Service

## What are the sizes of Starbucks drinks?
Published 01/21/2015 10:06 AM | Updated 09/04/2015 06:03 PM

The drink sizes we offer are Short, Tall, Grande, Venti® and Trenta®.

| | |
|---|---|
| Short | 8 fl. oz. |
| Tall | 12 fl. oz. |
| Grande | 16 fl. oz. |
| Venti® Hot | 20 fl. oz. |
| Venti® Cold | 24 fl. oz. |
| Trenta® Cold* | 30 fl. oz. |

*Only available for Shaken iced tea, Shaken iced tea lemonade, Iced coffee and Starbucks Refreshers® beverages.*

28.     Similar representations are made in Starbucks' in-store menu:

8

| Espresso Coffee | hot cal | | | | |
|---|---|---|---|---|---|
| Smoked Butterscotch Latte | 4.25 | 270 | | | |
| Latte Macchiato | 3.75 | 170 | | | |
| Flat White | 3.75 | 170 | | | |
| Cappuccino | 3.15 | 90 | 3.75 | 120 | 4.15 | 150 |
| Caffè Latte | 3.15 | 150 | 3.75 | 190 | 4.15 | 250 |
| Caramel Macchiato | 3.75 | 180 | 4.45 | 240 | 4.75 | 300 |
| White Chocolate Mocha | 3.75 | 370 | 4.45 | 470 | 4.75 | 580 |
| Caffè Mocha | 3.65 | 290 | 4.25 | 360 | 4.65 | 450 |
| Freshly Brewed Coffee | 1.85 | 5 | 2.10 | 5 | 2.45 | 5 |
| Iced Coffee Vanilla or Caramel | 2.25 | 60 | 2.65 | 90 | 2.95 | 130 |
| Cold Brew Limited Daily Availability | 2.75 | 0 | 3.25 | 5 | 3.65 | 5 |
| Frappuccino® Blended Beverages | | | | | |
| Smoked Butterscotch | 4.25 | 300 | 4.95 | 440 | 5.25 | 530 |
| Caramel | 3.95 | 300 | 4.65 | 410 | 4.95 | 510 |
| Mocha | 3.95 | 290 | 4.65 | 410 | 4.95 | 520 |
| Teavana Tea & Starbucks Refreshers® Iced Beverages | | | | | |
| Peach Green Tea Lemonade | 2.95 | 100 | 3.45 | 130 | 3.95 | 190 |
| Strawberry Açaí | 2.95 | 80 | 3.45 | 90 | 3.95 | 130 |

Espresso Shot +.80 +5 cal   Venti Iced up to +30¢
Banana Coconut Milk or Organic Soymilk +.60¢
2,000 calories a day is used for general nutrition advice, but calorie needs vary.

CLASS ACTION COMPLAINT

29.   This in-store menu was plainly visible to Plaintiff and the Class during the Class Period.

10

30.     The picture below represents a Starbucks Venti Cold Drink cup. This cup is used for the Cold Drinks listed in paragraph 1 above.  As demonstrated by this picture, the cup is labeled with 3 black lines.



31.     Starbucks' drinks are created according to a standard designed practice. For Cold Drinks, the standard practice is to fill the cup to the top black line with the Cold Drink liquid. Large pieces of ice are then added to the top of the cup. For example, if a customer orders

11

a Venti iced coffee or shaken iced tea Cold Drink, the Starbucks employee will pour iced coffee or tea into the cup up to the top black line, as represented by this picture:



32.     After pouring the Cold Drink in the cup, the Starbucks employee will add large pieces of ice to the top of the cup. Starbucks employees fill Cold Drink cups with ice using premeasured plastic scoopers, which escalate in size depending on the size of the drink. For example, a Starbucks employee uses a larger scooper to add ice to a Venti drink than they would to add ice to a Grande drink.

33.     Starbucks includes these 3 black lines on its Cold Drink cups to ensure that its employees fill these cups with less fluid ounces than are advertised on Starbucks' menu for a

12

given Cold Drink. In fact, Starbucks instructs its employees to provide its customers with fewer fluid ounces than advertised.

34.    As demonstrated above, the amount of the Cold Drink as poured pursuant to Starbucks' standard practice is far less than the amount it would take to fill up the Venti Cold Drink cup.



35.    The top black line on the Starbucks Venti Cold Drink cup typically represents approximately 14 fluid ounces, as demonstrated below. Put another way, when a Starbucks employee fills a Venti Cold Drink cup to the top black line, they are only pouring about 14 fluid ounces of Cold Drink into the cup, *not* 24 fluid ounces.

36.    The 3 black lines that Starbucks uses on its cups ensure that only about 14 ounces will be poured into a Venti Cold Drink cup by a Starbucks employee using the standard practice.

13

37.     Accordingly, a Starbucks customer who orders a Venti Cold Drink receives only 14 fluid ounces of that drink – just over *half* the advertised amount, and just over *half* the amount for which they are paying. In the iced coffee example, a Starbucks customer who orders and pay for a Venti iced coffee, expecting to receive 24 fluid ounces of iced coffee based on Starbucks' advertisement and marketing, will instead receive only about 14 fluid ounces of iced coffee.

38.     Further, a Starbucks customer who orders and pays for a Venti iced coffee will actually receive fewer fluid ounces of Cold Drink in that Venti than what is advertised by Starbucks for a Grande Cold Drink.

39.     Similarly, the amount of Cold Drink liquid that a Starbucks customer receives in an iced tea Cold Drink is less than advertised and contains a significant amount of large ice pieces. The picture below demonstrates that a customer ordering and paying for a Grande Shaken Iced Peach Green Tea Lemonade Cold Drink actually receives approximately 12 fluid ounces of that drink—*not* 16 fluid ounces as advertised:

[Space intentionally left blank]

14

40.   As demonstrated by the picture below, once the liquid is removed from that Grande Shaken Iced Peach Green Tea Lemonade Cold Drink, a significant amount of large ice pieces remains:

[Space intentionally left blank]

41.     The average Starbucks Venti Iced Coffee costs $2.95, as advertised, for 24 fluid ounces. The average Starbucks Venti Shaken Iced Tea costs $2.65. Starbucks' other Cold Drinks are even more expensive:  the average Venti Starbucks Refresher costs $3.95, the average Venti Shaken Iced Peach Green Tea Lemonade costs $3.75 and the average Venti Shaken Black Tea Lemonade costs $3.45.

16

42.     Similarly, Starbucks charges more for its Cold Drinks than it does for hot drinks. For example, as depicted in the menu above, a Grande Iced Coffee—which is advertised as containing 16 fluid ounces—and which contains much less—costs $2.65, while a Grande Freshly Brewed (Hot) Coffee costs $2.10. Essentially, Starbucks is not only under-filling its Cold Drinks compared to how they are advertised, but it is charging a premium price for them as well.

43.     Ice is not a "fluid." Water expands when frozen. Thus, when it melts, less ounces will remain. The smaller the pieces of ice, the more "accurate" the conversion of ounces—from frozen liquid—will be. However, large pieces of ice—like those used by Starbucks in its Cold Drinks—take up more space and thus when melted, will yield fewer measured "fluid" ounces of coffee or tea, for example. *See, e.g. "Freezing and Melting,"* World of Earth Science 2003, *available at http://www.encyclopedia.com/doc/1G2-3437800231.html.*

44.     In essence, Starbucks is advertising the size of its Cold Drink cups on its menu, rather than the amount of fluid a customer will receive when they purchase a Cold Drink – and deceiving its customers in the process.

45.     The Cold Drinks at issue in this case are beverages. The word "beverage" is defined as "a drinkable liquid." *See* http://www.merriam-webster.com/dictionary/beverage. Ice is not a "beverage" by definition. Accordingly, Starbucks actually gives the customer much less beverage in the Cold Drinks they order and pay for—as little as about 14 fluid ounces in a Venti Cold Drink advertised as containing 24 fluid ounces, for example.

46.     As Starbucks has recognized in the past, a reasonable consumer does not wait to consume that drink; rather, the reasonable consumer purchases a Starbucks drink to consume it at or very near the time of purchase. In effect, a reasonable consumer does not wait for the ice in a Cold Drink to melt before consuming the Cold Drink. Effectively, the critical time for measuring how many fluid ounces are present in a Cold Drink is at or very near the time of purchase. Further, a reasonable consumer expects the Cold Drink they ordered and paid for to contain the

17

amount of that Cold Drink advertised on the menu when it is handed to them by a Starbucks employee—24 fluid ounces of iced coffee, for example, in a Venti Cold Drink.

As Starbucks admits, a reasonable consumer purchases a Cold Drink to consume it while it is still cold, not after the beverage has warmed.

47.     As Starbucks further admits, by analogy, a reasonable consumer would not allow a scoop of hand-dipped ice cream to melt before consuming it.

48.     Starbucks' advertising practices are clearly meant to mislead consumers when combined with the standard practice of filling a Cold Drink cup with far less liquid than the cup can hold. If Starbucks truly intended to provide the amount of fluid ounces in its Cold Drinks that it advertises, there would be simple ways to do so. For example, Starbucks could sell its Venti Cold Drinks in cups that are large enough to allow room to both pour the advertised amount of Cold Drink in the cup and still have room to add ice.

49.     Starbucks is misleading customers who expect to receive the advertised amount of fluid ounces. For example, if a gallon of gas is advertised as costing three dollars, and a customer pays three dollars and pumps gas, that customer is expecting to receive a gallon of gas—not approximately half a gallon.

50.     Cold Drinks are under-filled to make more money and higher profits, to the detriment of consumers who are misled by Starbucks' intentionally misleading advertising practices.

51.     The amount of fluid ounces that Starbucks claims it is providing in Cold Drinks is clearly and prominently advertised, with the intent that Plaintiff and the Class would rely on these representations.

52.     The amount of fluid ounces in a Cold Drink is a material fact that a reasonable consumer would consider important. Had Plaintiff and the Class known that the Cold Drinks contained significantly less fluid ounces than represented by Starbucks, they would have not paid as much, if anything, for the Cold Drinks.

18

53.     Given the foregoing, Plaintiff and the Class were induced by Starbucks into purchasing the Cold Drinks at artificially inflated prices, which they would not have purchased or paid as much for the Cold Drinks, had they known the truth about the amount of fluid ounces of the ordered drink actually present in the Cold Drink.

54.     As a direct and proximate result of Starbucks' conduct, Plaintiff and the Class have suffered injury in fact and lost money or property. Starbucks, despite having knowledge that its representations are misleading to Plaintiff and the Class, continue to label, advertise, and sell its Cold Drinks in a deceptive and deceiving manner.

55.     Plaintiff and the Class are at risk of suffering further injury if the relief sought is not granted.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action individually and as a class action on behalf of the following Class: All persons in the state of California who purchased one or more of Defendant's Cold Drinks at any time between April 27, 2006 and the present (the "Class").

57.     Plaintiff reserves the right to redefine the Class prior to certification.

58.     Excluded from the Class is any entity in which Defendant has a controlling interest, officers or directors of Starbucks, all government entities, and any justice or judicial officer presiding over this matter.

59.     This action is brought and may be properly maintained as a class action pursuant to California Code of Civil Procedure section 382. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

60.     The Class is so numerous that the individual joinder of all of its members is impracticable. The exact number and identities of members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.

61.     Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common

19

legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

      a.      Whether Defendant's labeling, marketing, advertising, and promotion of its Cold Drinks was false and misleading;

      b.      Whether Defendant's labeling, marketing, advertising, and promotion of its Cold Drinks constituted fraud;

      c.      Whether Defendant's conduct constitutes breach of express warranty;

      d.      Whether Defendant's conduct constitutes breach of the implied warranty of merchantability;

      e.      Whether Defendant's conduct constitutes negligent misrepresentation;

      f.      Whether Defendant's conduct resulted in unjust enrichment;

      g.      Whether Defendant's conduct constitutes a violations of the California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.)* and the California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*);

      h.      Whether Plaintiff and the Class are entitled to compensatory and punitive damages, and if so, the nature of such damages;

      i.      Whether Plaintiff and the Class are entitled to restitutionary relief; and

      j.      Whether Plaintiff and the Class are entitled to injunctive relief.

      62.      Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Starbucks' common course of conduct since they all relied on Starbucks' representations concerning the Cold Drinks and purchased the Cold Drinks based on those representations.

      63.      Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class litigation.

20

Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.

64.     A Class Action is superior to other available means for the fair and efficient adjudication of the claims of the Class.  Each individual Class member may lack the resources to undergo the burden and expense associated with individually prosecuting the complex, expensive, and extensive litigation necessary to establish Defendant's liability and obtain adequate compensation for the injuries sustained. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the complex legal and factual issues present in this case. Individualized litigation also presents the potential for inconsistent and contradictory judgments. Conversely, a class action presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication. Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty

65.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

66.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

67.     Starbucks, as the manufacturer, distributer, and/or seller expressly warranted that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

68.     In fact, Starbucks Cold Drinks are not fit for such a purpose because each of these express warranties are false. Starbucks Cold Drinks are under-filled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

21

69.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class have been injured because they would not have purchased or paid as much for the Cold Drinks, had they known the truth about the amount of fluid ounces of the ordered drink actually present in the Cold Drink.

70.     Additionally, Starbucks Cold Drinks did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

71.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

72.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

73.     Starbucks, as the manufacturer, distributer, and/or seller expressly warranted that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

74.     In fact, Starbucks Cold Drinks are not fit for such a purpose because each of these express warranties are false. Starbucks Cold Drinks are under-filled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

75.     Starbucks breached the implied warranty of merchantability in selling its Cold Drinks because the goods were not of fair or average quality within the description and the goods were not fit for their intended and ordinary purpose due to under-filling. As a result, Plaintiff and the Class did not receive the goods as impliedly warranted by Starbucks to be merchantable.

76.     Plaintiff and the Class purchased Starbucks Cold Drinks in reliance upon Defendant's representations, skill, and judgment and the implied warranties of fitness for that purpose.

77.     Starbucks Cold Drinks were not altered by Plaintiff or the Class.

22

78.     Starbucks Cold Drinks were defective when they left the exclusive control of Defendant.

79.     Defendant knew that Starbucks Cold Drinks would be purchased and used without additional testing by Plaintiff and the Class.

80.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have been injured because they would not have purchased or paid as much for the Cold Drinks, had they known the truth about the amount of fluid ounces of the ordered drink actually present in the Cold Drink.

81.     Additionally, Starbucks Cold Drinks did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## THIRD CAUSE OF ACTION

### Negligent Misrepresentation

82.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

83.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

84.     Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

85.     In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are under-filled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

86.     At the time of its misrepresentations, Defendants knew or should have known that these representations were false or alternatively that it made them without knowledge of their truth or veracity.

23

87.     Starbucks owed its customers, including Plaintiff and the Class, a duty to refrain from providing them with false and misleading information, specifically the amount of fluid ounces in its Cold Drinks.

88.     Starbucks breached that duty, by misrepresenting the amount of fluid ounces in its Cold Drinks to Plaintiff and the Class and/or omitting material facts about the Cold Drinks.

89.     These negligent misrepresentations, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce them and actually did induce them to purchase Starbucks Cold Drinks.

90.     Plaintiffs and the Class would not have purchased the Starbucks Cold Drinks, or would not have paid the price they did, if the true facts had been known.

91.     Defendant's negligent misrepresentation caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief.

## FOUTH CAUSE OF ACTION

### Unjust Enrichment

92.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

93.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

94.     Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

95.     In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are under-filled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

96.     Accordingly, Starbucks has been unjustly enriched in retaining revenues derived from Plaintiff the Class members' purchase of Starbucks Cold Drinks under these circumstances.

24

Starbucks' misrepresentations caused Plaintiff and the Class harm and unjustly enriched Starbucks because Plaintiff and the Class would not have purchased Starbucks Cold Drinks or paid the price they did, had the true facts been known.

97.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the Class as a result of these misrepresentations is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class.

## FIFTH CAUSE OF ACTION

### Fraud

98.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

99.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

100.     As detailed throughout Plaintiff's Complaint, Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

101.     In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are under-filled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

102.     Starbucks knew or should have known that it was under-filling its Cold Drinks because the standard practice was to fill a Cold Drink cup with substantially less Cold Drink liquid than advertised on Starbucks' menu.

103.     Defendant's misrepresentations were intended to induce and actually induced Plaintiff and the Class to purchase Starbucks Cold Drinks. In purchasing the Cold Drinks, Plaintiff and the Class reasonably and justifiably relied on Defendant's fraudulent representations.

25

104.     Plaintiff and the Class were damaged through their purchase of Starbucks Cold Drinks under these circumstances. Plaintiff and the Class would not have purchased Starbucks Cold Drinks or paid the price they did, had the true facts been known.

## SIXTH CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750 *et seq.*)

105.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

106.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

107.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA").   Plaintiff and members of the Class are consumers as defined by California Civil Code section 1761(d). The Cold Drinks are goods within the meaning of California Civil Code section 1761(a).

108.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the Class, which were intended to result in, and did result in, the sale of the Cold Drinks:

> (5)     Representing that [the Cold Drinks] have... quantities...which they do not have
> ....

> (9)     Advertising [the Cold Drinks] ...with intent not to sell them as advertised.

109.     Defendant violated the CRLA by representing and advertising that the Cold Drinks, as discussed above, contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

110.     In fact, Starbucks' representations about its Cold Drinks were false. Starbucks

26

Cold Drinks are under-filled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

111.    At this time, Plaintiff seeks only injunctive relief under this cause of action. Under section 1782 of the CLRA, Plaintiff will notify Defendant in writing of the particular violations of section 1770 of the CLRA and demand that Defendant rectify the problems associated with the behavior detailed above, which acts and practices are in violation of California Civil Code section 1770.

112.    If Defendant fails to respond adequately to Plaintiff s above-described demand within 30 days of Plaintiff s notice, under California Civil Code section 1782(b), Plaintiff will amend the Complaint to request damages and other relief permitted by California Civil Code section 1780.

113.    Plaintiff also has filed a Declaration of Venue in accordance with Civil Code section 1780(d).

114.    Under Section 1782(d) of the CLRA, Plaintiff seeks an order enjoining  the act and practices described above, restitution of property, and any other relief that  the court deems proper.

115.    Defendant's conduct is malicious, fraudulent, and wanton, and intentionally misleads and withholds material information from consumers in order to increase the   sale of the Cold Drinks.

116.    Defendant's misrepresentations and omissions were material Plaintiff a n d members of the Class.  Plaintiff and members of the Class would not have purchased   and consumed the Cold Drinks had it not been for Defendant's misrepresentations and concealment of material facts. Plaintiff and members of the Class were damaged as a result of Defendant's material misrepresentations and omissions.

///

///

27

## SEVENTH CAUSE OF ACTION

### Violation of Unfair Business Practices Act

### (California Business & Professions Code §§ 17200 *et seq.*)

117.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

118.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

119.    California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."

120.    As detailed throughout Plaintiff's Complaint, Starbucks, as the manufacturer, distributer, and/or seller represented that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

121.    In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are under-filled.  A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

122.    Starbucks violated California Business and Professions Code section 17200 by misrepresenting the amount of fluid ounces of Cold Drink contained in its Cold Drinks.  Starbucks made the misrepresentations about its Cold Drinks described throughout this Complaint with the intent that Plaintiff and the Class rely on them and purchase Starbucks Cold Drinks.

123.    Plaintiff and the Class were damaged by Starbucks' violation and their subsequent purchases of Starbucks Cold Drinks under these circumstances.  Plaintiff and the Class would not have purchased Starbucks Cold Drinks or paid the price they did, had the true facts been known.

28

124.   Defendant's misrepresentations and omissions of material facts, as set forth herein, constitute an unlawful practice because they violate California Civil Code sections 181572, 1573, 1709, 1710, 1711, and 1770, among others, and the common law.   Defendant's misrepresentations and omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code sections 17200 et seq., in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.

125.   Plaintiff also asserts a violation of public policy by withholding material facts from consumers.  Defendant's violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

126.   There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

127.   California Business and Professions Code section 17200 also prohibits any fraudulent business act or practice." Defendant's misrepresentations and concealment of material facts, as set forth above, were false, misleading, and/or likely to deceive the public within the meaning of California Business and Professions Code section 17200.

128.   Defendant's misrepresentations and concealment were made with knowledge of their effect, and were done to induce Plaintiff and members of the Class to purchase the Cold Drinks.  Plaintiff and members of the Class saw and justifiably relied on Defendant's 8misrepresentations when purchasing the Cold Drinks.

129.   Defendant's conduct caused and continues to cause injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.

130.   Plaintiff and members of the Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations and concealment of material facts. Defendant's misrepresentations and omissions alleged herein are objectively material to the

29

reasonable consumer. Reliance upon the misrepresentations and omissions discussed herein may therefore be presumed as a matter of law. The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs and the members of the Class' injuries.

131.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and members of the Class to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

132.    Additionally, under Business and Professions Code section 17203, Plaintiff and members of the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to correct its actions.

### EIGHTH CAUSE OF ACTION

### Violation of False Advertising Law

### (California Business & Professions Code 17500 *et seq.*)

133.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

134.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

135.    California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

136.    Defendant violated California Business and Professions Code section 17500 by, by advertising that Starbucks' Cold Drinks contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, "24 fl. oz." for a Venti, and "30 fl. oz." for a Trenta.

137.    In fact, Starbucks' representations about its Cold Drinks were false. Starbucks Cold Drinks are under-filled. A Tall does not contain 12 fluid ounces, a Grande does not contain

30

16 fluid ounces, a Venti does not contain 24 fluid ounces, and a Trenta does not contain 30 fluid ounces of Cold Drink.

138.    Defendant's deceptive practices were specifically designed to induce Plaintiff and members of the Class to purchase the Cold Drinks over those of its competitors.

139.    Plaintiff and members of the Class would not have purchased and consumed the Cold Drinks had it not been for Defendant's misrepresentations and concealment of material facts.

140.    The content of the advertisements, as alleged herein, were of a nature likely to deceive a reasonable consumer.

141.    Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

142.    Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions may therefore be presumed as a matter of law.  The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiffs and the members of the Class' injuries.

143.    Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code section 17500.

144.    As a result of the foregoing, Plaintiff and members of the Class have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alexander Forouzesh, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

   a. For an Order certifying the Class and naming Plaintiff Alexander Forouzesh as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

31

b. For an Order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an Order declaring that Defendant's conduct violates the common law provisions referenced herein;

d. For an Order finding in favor of Plaintiff, the Class on all counts alleged herein;

e. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

f. For pre-judgment interest on all amounts awarded to the full extent allowed by law;

g. Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and members of the Class;

h. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by

i. An award of pre- and post-judgment interest to the extent allowed,

j. For injunctive relief as pleaded or as the Court may deem proper; and

k. For an Order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses under California Code of Civil Procedure section 1021.5 to the full extent allowed by law.

DATED: May 18, 2016                     **FARAHI LAW FIRM, APC**

By:                            
Justin Farahi
Raymond M. Collins

Attorney for Plaintiff,
ALEXANDER FOROUZESH

32